**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
THE ABSOLUT COMPANY AKTIEBOLAG
SE-117 97
Stockholm, Sweden.

               Plaintiff,

-against-                                       Case No.:  15 CV 3224

HAPPY HEARTS WINE, LLC,
d/b/a HAPPY SPIRITS, LLC,
4510 18th Avenue
Brooklyn, NY 11204

               Defendant.
-----------------------------------------------------------X

## COMPLAINT

Plaintiff The Absolut Company Aktiebolag ("TAC") files this Complaint against Defendant Happy Hearts Wine, LLC d/b/a Happy Spirits, LLC and alleges as follows:

### INTRODUCTION

1.      KAHLUA® brand coffee liqueur is a famous and iconic alcohol beverage in the United States and around the world.  Introduced in the U.S. market in 1938, today KAHLUA is the number one brand of coffee liqueur in the United States, and is enjoyed by U.S. consumers in, *inter alia*, coffee, milk, by itself, and in numerous classic cocktails, including but not limited to the White Russian, the Black Russian and the Mudslide.

2.      For years, KAHLUA coffee liqueur has been sold in distinctive packaging—a brown bottle featuring a front yellow label with a semi-circular drawing of an archway and a red border, with the KAHLUA logo in a distinctive red stylized font.  The KAHLUA label used in the United States is below:



3.      This Spring, Defendant began importing into the United States a knockoff, counterfeit coffee liqueur product under the mark KAHFUA, for distribution and sale to U.S. consumers.   Defendant's KAHFUA knockoff product features a substantially indistinguishable imitation of the KAHLUA trademark and the KAHLUA label and artwork.  Specifically, like KAHLUA, Defendant's counterfeit product is in a brown bottle featuring a front semi-circular yellow label, with a drawing of an archway and a red border, with a counterfeit KAHFUA trademark in a red stylized font that is substantially indistinguishable from the font used with the genuine KAHLUA trademark and product:



(the foregoing label, which contains the "KAHFUA Mark" is referred to herein as the "KAHFUA Label").

4.      Defendant's counterfeit KAHFUA product is virtually identical to and substantially  indistinguishable from the genuine KAHLUA coffee liqueur product:



| TAC's KAHLUA Coffee Liqueur | Defendant's Knockoff KAHFUA Product ("KAHFUA Product") |
|---|---|

As the above images make clear, Defendant is willfully seeking to trade off the significant goodwill in the KAHLUA brand with the intent of deceiving consumers into purchasing its fake KAHFUA coffee liqeur product.

5.      This is an action for trademark counterfeiting, trademark infringement, trademark dilution, false designation of origin, and unfair competition under federal and New York law.

## PARTIES

6.      TAC is a Swedish corporation with its principal place of business at SE-117 97, Stockholm, Sweden.  TAC is a leading international manufacturer, producer, and marketer of famous alcohol beverages, including KAHLUA coffee liqueur.

7.      Defendant Happy Hearts Wine, LLC d/b/a Happy Spirits LLC is a New York limited liability company with its principal place at 4510 18th Avenue, Suite 102, Brooklyn, New York 11204.   Upon information and belief, Defendant is in the business of importing alcohol beverages into the United States for distribution and sale to U.S. consumers.  Defendant imports its counterfeit KAHFUA coffee liqueur into the United States for distribution and sale to consumers, including to consumers living in this district, in a blatant effort to capitalize on the goodwill of TAC's famous KAHLUA brand.

- 3 -

## JURISDICTION AND VENUE

8.     TAC's claims arise under the Lanham Act of the United States, 15 U.S.C. § 1051 *et seq.,* and the laws of New York.  The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. § 1121.

9.     The Court has supplemental jurisdiction over the claims arising under the statutory and common law of New York under 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they are part of the same case or controversy and derive from a common nucleus of operative facts.

10.     The Court has personal jurisdiction over Defendant because (1) Defendant resides and has its principal place of business in this judicial district and (2) Defendant's unlawful acts occurred in this district, including the importation, distribution, and sale of Defendant's knockoff coffee liqueur product bearing Defendant's counterfeit KAHFUA Mark and KAHFUA Label.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district, *see* 28 U.S.C. § 1391(c)(2), and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district, namely the importation, distribution, and sale of Defendant's knockoff coffee liqueur product bearing Defendant's counterfeit KAHFUA Mark.

## FACTUAL BACKGROUND

### I.     TAC and Its Famous KAHLUA Marks and Products

12.     First manufactured and sold nearly eighty years ago in the United States, KAHLUA coffee liqueur is a famous alcohol beverage in the United States.  TAC and its predecessors-in-interest have used, advertised, and promoted in commerce, and continue to use, advertise and promote in commerce, the KAHLUA trademarks in connection with the worldwide

distribution and sale of coffee liqueur and related products since at least as early as 1938.  By

virtue of its long, continuous, and widespread use, KAHLUA has become a famous and iconic

spirits brand.

13.     By assignment from its predecessors-in-interest, TAC owns the entire right, title,

interest, and goodwill to the KAHLUA trademarks throughout the United States.

14.     In addition to its extensive common law rights to the KAHLUA trademarks

throughout the United States, TAC owns many U.S. trademark registrations for its KAHLUA

products and related designs, including the following:

| Trademark | Reg. No. | Reg. Date | First Use in Commerce | Goods | Status |
|---|---|---|---|---|---|
| KAHLUA & Design  | 711,952 | 02/28/61 | 03/09/38 | Coffee liqueur | Incontestable |
| KAHLUA | 752,237 | 07/02/63 | 03/09/38 | Coffee liqueur | Incontestable |
| KAHLUA (stylized)  | 752,236 | 07/02/63 | 03/09/38 | Coffee liqueur | Incontestable |
| KAHLUA ESPECIAL & Design  | 2,276,182 | 09/07/99 | 08/08/98 | Liqueur | Incontestable |
| KAHLUA MIDNIGHT | 4,332,879 | 05/07/13 | 10/00/12 | Alcoholic beverages except beers | Valid |
| KAHLÚA & Design  | 4,489,132 | 02/25/14 | 09/00/12 | Alcoholic beverages except beers | Valid |

TAC's registered and common law marks are collectively referred to in this Complaint as the "KAHLUA Marks." Certified status and title copies of the above registrations from the U.S. Patent and Trademark Office are attached as Exhibit A.

15. Many of the KAHLUA Marks, as noted above, have achieved "incontestable" status under 15 U.S.C. § 1065, thereby constituting conclusive evidence of the validity and registration of the KAHLUA Marks, TAC's ownership of the KAHLUA Marks, and TAC's exclusive right to use the KAHLUA Marks in commerce in connection with those products. *See* 15 U.S.C. § 1115(b). TAC's other KAHLUA registrations above constitute *prima facie* evidence of the validity and registration of those KAHLUA Marks, TAC's ownership of those KAHLUA Marks, and TAC's exclusive right to use those KAHLUA Marks in commerce in connection with those products. *See* 15 U.S.C. § 1115(a).

16. KAHLUA is the number one coffee liqueur brand in the United States and in the world, and the number six brand worldwide in international liqueurs.

17. Many millions of cases of KAHLUA coffee liqueur have been sold around the world and throughout the United States. For example, in 2013, approximately 1.6 million, 9-liter cases of KAHLUA-branded coffee liqueur (or roughly 19.2 million bottles) were sold around the world, including approximately 899,000 9-liter cases (or roughly 10.8 million bottles) in the United States alone. Almost $1 billion worth of KAHLUA coffee liqueur has been sold in the United States in the past 5 years. The United States is the top market for KAHLUA coffee liqueur around the world.

18. TAC promotes and advertises its KAHLUA brand through a variety of media, including print and the Internet. TAC promotes its iconic KAHLUA coffee liqueur and related products on the website kahlua.com. The kahlua.com website includes recipes for several classic

cocktails made with its KAHLUA coffee liqueur, including for example the White Russian.  So far for calendar year 2015, the kahlua.com website has had approximately 1.6 million page views from over 380,000 visitors.  Since at least 2010, TAC has actively maintained a Facebook page for its KAHLUA brand (http://www.facebook.com/Kahlua), which has generated over 350,000 likes.  Since February 2011, TAC has promoted its KAHLUA brand by actively maintaining a Twitter account, http://twitter.com/KahluaUS, which has over 3,000 followers.

19.     TAC further promotes its KAHLUA brand through its official YouTube account, (http://www.youtube.com/user/KAHLUAvideo).  The videos uploaded to TAC's KAHLUA YouTube page have attracted approximately 5.3 million views.  In 2014, TAC partnered with Academy Award-winning actor Jeff Bridges to create a short film to promote KAHLUA coffee liqueur, entitled "The White Russian," a reference to the classic cocktail for which TAC's KAHLUA coffee liqueur is a key ingredient.  In the two weeks following the launch of "The White Russian" short film, it had attracted nearly 1.3 million views.  Coverage surrounding the release of "The White Russian" appeared on huffingtonpost.com, radaronline.com, mensjournal.com, starmagazine.com, people.com, adweek.com, usatoday.com, and other media.

20.     In addition, KAHLUA coffee liqueur has received substantial media attention. For example, during the past year, KAHLUA coffee liqueur has been featured on buzzfeed.com, Juicy magazine, instyle.com, glam.com, MSN Living, glamour.com, self.com, slate.com, people.com, ebony.com, marketwatch.com, and other media.

21.     TAC and its predecessors-in-interest have invested millions of dollars to advertise, promote, and market the iconic KAHLUA brand.  From 2008 through 2013, TAC devoted over $30 million to advertising its KAHLUA brand around the world, nearly $28 million of which was spent on advertising in the United States.

22.     TAC's KAHLUA Marks are inherently distinctive and also have acquired secondary meaning in the marketplace as designating goods and services emanating exclusively from TAC.

23.     As a result of TAC's and its predecessors-in-interest's long, continuous, and widespread use of the KAHLUA Marks, the KAHLUA Marks have achieved significant goodwill, widespread recognition, and fame throughout the United States.

## II.     Defendant's Willful and Infringing Use of the Counterfeit KAHFUA Mark

24.     Long after TAC and TAC's predecessors-in-interest began using and registered the KAHLUA Marks in commerce, Defendant applied for a Certificate of Label Approval ("COLA") for KAHFUA for "distilled spirits" from the U.S. Alcohol and Tobacco Tax and Trade Bureau ("TTB").  Under federal law, an importer or seller of liquor in the U.S. is required to obtain a COLA from the TTB prior to commencing sale of each liquor product.  *See* 27 C.F.R. § 5.55(a).  A granted COLA signifies compliance with TTB's technical requirements for sale of alcohol, including, *inter alia*, that the product label identifies the importer and the percentage alcohol content and includes government-mandated warnings about alcohol consumption. Significantly, the grant of a COLA does not provide trademark protection, nor does it indicate "that a particular mark may be used in violation of applicable intellectual property law." *See* TTB, Alcohol FAQs – Advertising, Labeling, and Formulation, http://www.ttb.gov/faqs/alcohol_faqs.shtml#alfd (last accessed May 22, 2015); TTB, Instructions to Form 5100.31, Application for and Certification/Exemption or Label/Bottle Approval, http://www.ttb.gov/forms/f510031.pdf (last accessed May 21, 2015).

25.     Defendant applied for a COLA for the below front label, which is semi-circular in shape has a yellow background, drawing of an archway, and a red border, with KAHFUA in red stylized letters including an accent over the "U" in "KAHFUA":



The label states that the product is a "coffee expresso [sic] liqueur" and is "made with fresh roasted coffee beans."

26.     Defendant's COLA application also included the below back label for its product, which reads: "Mix with milk or coffee creamer, for an original Sombrero.  Add a splash of vodka for a classic White Russian.  Serve on rocks & enjoy!":



27.     On March 3, 2015, the TTB granted Defendant a COLA for the above labels for "coffee (café) liqueur."  *See* <u>Exhibit B</u>.

28.     Shortly after learning of the issuance of Defendant's COLA, counsel for TAC sent Defendant a letter on March 20, 2015, demanding, among other things, that it cease all importation, distribution, advertising, sale and use of any products bearing the KAHFUA mark and the accompanying label design.  TAC's counsel sent the demand letter by Federal Express to

Defendant's mailing address identified on the COLA that was granted for the KAHFUA product; by email to vickeyconsultants@gmail.com, which was an additional address provided on the COLA; and to Defendant's general contact email, info@happyheartswine.com, as provided on Defendant's website www.happyheartswine.com.  A copy of that letter, sent via email and Federal Express, along with the delivery confirmation showing that Defendant received this letter, is attached as Exhibit C.  TAC asked for a response to its letter by April 3, 2015.  *See id.*

29.     Despite receiving TAC's March 20, 2015 letter (*see* delivery confirmation at Exhibit C), Defendant did not respond by the requested April 3, 2015 deadline.  TAC thus sent a final demand to Defendant on April 14, 2015, again demanding that Defendant cease all importation, distribution, advertising, sale, and use of any products bearing the KAHFUA mark and the accompanying label design.  A copy of that letter, again sent to three addresses via email and Federal Express, along with the delivery confirmation showing that Defendant received this letter, is attached as Exhibit D.

30.     On April 14, 2015, counsel for TAC received an email from Vicki Thatcher of Vic-Key Consultants at vickeyconsultants@gmail.com, stating that she had forwarded TAC's April 14, 2015 letter to "Mr. Benjamin Bauer at Happy Hearts Wine Co. in Brooklyn, NY and asked him to contact [TAC's counsel about this issue]."  *See* Exhibit E.  Ms. Thatcher also stated that she "forwarded [TAC's counsel's] original email from March as well."  *Id.*

31.     TAC has not received any communication from Defendant or anyone on Defendant's behalf, including Mr. Bauer or Ms. Thatcher, since Ms. Thatcher's April 14, 2015 email.

32.     Despite TAC's repeated demands that Defendant cease all importation, distribution, sale, advertising, and use of the KAHFUA mark, Defendant has continued to

import, distribute, sell, and advertise its counterfeit KAHFUA product in United States commerce.

33.     On April 28, 2015, Paul Stone-Jansen of Robert Jackson and Associates, Inc., an investigator hired to investigate Defendant's use of the KAHFUA mark, purchased Defendant's KAHFUA knockoff product at Liquors Galore, located at 1212 Avenue J, Brooklyn, New York 11230, for $19.99 per bottle.  *See* Exhibit F.  A photo of the product purchased by TAC's investigator appears below:



*See* Exhibit F.

34.     Defendant's infringing KAHFUA Marks, KAHFUA Label and KAHFUA Product are blatant counterfeits of TAC's KAHLUA Marks, label, and product:



| TAC's KAHLUA Mark | Defendant's Counterfeit KAHFUA Mark |
| --- | --- |
| TAC's KAHLUA Label | Defendant's Counterfeit KAHFUA Label |
| TAC's KAHLUA-branded Coffee Liqueur | Defendant's Knockoff KAHFUA Product |

35.     Defendant's goods in connection with which it uses its counterfeit and knockoff KAHFUA Mark and KAHFUA Label are identical in kind to the goods with which TAC uses and has registered its KAHLUA Marks, namely coffee liqueur.

36.     The parties' respective goods will be or are marketed through the same channels of trade, including U.S. liqueur stores; will be or are advertised in the same types of media; and target similar consumers, namely U.S. consumers of legal drinking age.

37.     Defendant's use of its counterfeit KAHFUA Mark and KAHFUA Label is likely to cause confusion, mistake, or deception as to the origin of Defendant's KAHFUA Product, as well as confusion regarding affiliation, connection, sponsorship or association of Defendant with TAC, including whether TAC approves, sponsors, or endorses Defendant's goods or services.

38.     Defendant's actions are knowing, willful, deliberate, and performed with the intent to trade off of TAC's goodwill and reputation tied to its iconic and famous KAHLUA brand and with the intent to deceive consumers into believing they are purchasing TAC's famous KAHLUA coffee liqueur.

39.     Defendant's wrongful conduct has caused TAC to lose control over the goodwill and reputation associated with its KAHLUA Marks.

40.     TAC has suffered damages, and Defendant has obtained profits or been unjustly enriched as a result of Defendant's wrongful conduct.

41.     Defendant's acts irreparably injure TAC's business, reputation, and goodwill. Unless Defendant is enjoined from its wrongful conduct, TAC and the public will continue to suffer irreparable injury and harm, for which they have no adequate remedy at law.

## COUNT I

## TRADEMARK COUNTERFEITING UNDER THE LANHAM ACT
### (15 U.S.C. § 1114)

42.     TAC re-alleges and incorporates the allegations in the paragraphs above as if fully set forth herein.

43.     TAC owns a family of KAHLUA Marks, including several U.S. federal trademark registrations, for alcohol beverages, including coffee liqueur and liqueur.

44.     Defendant imports, distributes, promotes and sells in the U.S. an alcohol beverage it describes as "coffee expresso [sic] liqueur" under its infringing KAHFUA Mark and KAHFUA Label.  Defendant's infringing KAHFUA Mark and KAHFUA Label are virtually identical to and substantially indistinguishable from TAC's KAHLUA Marks.

45.     Defendant's use of its infringing KAHFUA Mark and KAHFUA Label on its "coffee expresso [sic] liqueur" that are virtually identical and substantially indistinguishable from TAC's KAHLUA Marks for goods identified in TAC's registration certificates constitutes willful and deliberate use in commerce of reproductions, counterfeits, copies, or colorable imitations of TAC's federally registered KAHLUA Marks, and therefore constitutes use of counterfeit marks in violation of 15 U.SC. § 1114(1).

46.     Defendant's knowing use of counterfeit marks in the trafficking of counterfeit goods is likely to cause confusion, mistake, or deception as to source, origin, affiliation, sponsorship, connection or association of Defendant's products.

47.     Defendant's acts have caused TAC to lose control over the reputation and goodwill associated with TAC's KAHLUA Marks.

48.     TAC has suffered damages and Defendant has obtained profits and/or unjust enrichment as a result of Defendant's knowing counterfeiting of TAC's KAHLUA Marks.

- 14 -

49.     Defendant's acts irreparably injure TAC's business, reputation, and goodwill. Unless Defendant is enjoined from its wrongful conduct, TAC and the public will continue to suffer irreparable injury and harm, for which they have no adequate remedy at law.

## COUNT II

## TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT
## (15 U.S.C. § 1114)

50.     TAC re-alleges and incorporates the allegations in the paragraphs above as if fully set forth herein.

51.     TAC owns a family of KAHLUA Marks, including several U.S. federal trademark registrations, for alcohol beverages, including coffee liqueur and liqueur.

52.     Defendant imports, distributes, promotes and sells in the U.S. an alcohol beverage it describes as "coffee expresso [sic] liqueur" under its KAHFUA Mark and KAHFUA Label. Defendant's infringing KAHFUA Mark and KAHFUA Label are virtually identical to and substantially indistinguishable from TAC's KAHLUA Marks.

53.     Defendant's use of its infringing KAHFUA Mark and KAHFUA Label constitutes trademark infringement, unfair competition, and false designation of origin because such use is likely to cause confusion, mistake, or deception as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant's goods.

54.     Defendant has willfully infringed TAC's KAHLUA Marks.  TAC's trademark registrations constitute constructive notice to the public of TAC's exclusive trademark rights. *See* 15 U.S.C. § 1072.  In addition, prior to filing this Complaint, TAC twice notified Defendant of Defendant's infringement of TAC's KAHLUA Marks, yet Defendant failed to cease use of its infringing KAHFUA Mark or KAHFUA Label.  Defendant had actual and constructive

- 15 -

knowledge of TAC's ownership of its federally registered KAHLUA Marks prior to Defendant's use of its KAHFUA Mark and KAHFUA Label.

55.     Defendant's acts constitute knowing, deliberate, and willful infringement of TAC's federally registered KAHLUA Marks and render this an "exceptional case" under 15 U.S.C. § 1117(a).

56.     Defendant's wrongful conduct has caused TAC to lose control over the reputation and goodwill associated with TAC's KAHLUA Marks.

57.     TAC has suffered damages and Defendant has obtained profits and/or unjust enrichment as a result of Defendant's willful infringement of TAC's KAHLUA Marks.

58.     Defendant's acts irreparably injure TAC's business, reputation, and goodwill. Unless Defendant is enjoined from its wrongful conduct, TAC will continue to suffer irreparable injury and harm, for which TAC has no adequate remedy at law.

## COUNT III

### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### UNDER THE LANHAM ACT
### (15 U.S.C. § 1125)

59.     TAC re-alleges and incorporates the allegations in the paragraphs above as if fully set forth herein.

60.     TAC owns a family of KAHLUA Marks, including several U.S. federal trademark registrations, for alcohol beverages, including coffee liqueur and liqueur.

61.     Defendant imports, distributes, promotes and sells in the U.S. an alcohol beverage it describes as "coffee expresso [sic] liqueur" under its KAHFUA Mark and KAHFUA Label. Defendant's KAHFUA Mark and KAHFUA Label are virtually identical to and substantially indistinguishable from TAC's KAHLUA Marks.

62.     Defendant's acts constitute unfair competition and false designation of origin because they are likely to cause confusion, mistake, or deception as to source, origin, affiliation, connection, or association between Defendant and Defendant's knockoff KAHFUA Product, on the one hand, and TAC and TAC's KAHLUA Marks, on the other hand.

63.     Defendant has willfully infringed TAC's KAHLUA Marks.  TAC's trademark registrations constitute constructive notice to the public of TAC's exclusive trademark rights. *See* 15 U.S.C. § 1072.  In addition, prior to filing this Complaint, TAC twice notified Defendant of Defendant's infringement of TAC's KAHLUA Marks, yet Defendant failed to cease use of its infringing KAHFUA Mark or KAHFUA Label.  Defendant had actual and constructive knowledge of TAC's ownership of its federally registered KAHLUA Marks prior to Defendant's use of its infringing KAHFUA Mark and KAHFUA Label.

64.     Defendant's acts render this an "exceptional case" under 15 U.S.C. § 1117(a).

65.     Defendant's acts have caused TAC to lose control over the reputation and goodwill associated with TAC's KAHLUA Marks.

66.     TAC has suffered damages and Defendant has obtained profits and/or unjust enrichment as a result of Defendant's unfair competition and false designation of origin.

67.     Defendant's acts irreparably injure TAC's business, reputation, and goodwill. Unless Defendant is enjoined from its wrongful conduct, TAC and the public will continue to suffer irreparable injury and harm, for which they have no adequate remedy at law.

## COUNT IV

### TRADEMARK DILUTION UNDER THE LANHAM ACT
### (15 U.S.C. § 1125(c))

68.     TAC re-alleges and incorporates the allegations in the paragraphs above as if fully set forth herein.

69.     TAC's KAHLUA Marks are famous and inherently distinctive.

70.     Defendant commenced use of its knockoff KAHFUA Mark and KAHFUA Label in commerce long after TAC's KAHLUA Marks had become famous and distinctive.

71.     By using its knockoff KAHFUA Mark and KAHFUA Label in commerce, Defendant has injured and is likely to injure TAC's business reputation, Defendant has blurred and tarnished and is likely to blur and tarnish the distinctive quality of TAC's KAHLUA Marks, and Defendant has lessened the capacity of TAC's famous KAHLUA Marks to exclusively identify and distinguish TAC's goods and is likely to lessen the capacity of TAC's famous KAHLUA Marks to exclusively identify and distinguish TAC's goods, all in violation of 15 U.S.C. § 1125(c).

72.     Defendant's acts render this an "exceptional case" under 15 U.S.C. § 1117(a).

73.     Defendant's acts have caused TAC to lose control over the reputation and goodwill associated with its KAHLUA Marks.

74.     Defendant's acts irreparably injure TAC's business, reputation, and goodwill. Unless Defendant is enjoined from its wrongful conduct, TAC will continue to suffer irreparable injury and harm for which it has no adequate remedy at law.

## COUNT V

### TRADEMARK DILUTION UNDER NEW YORK LAW
(N.Y. Gen. Bus. Law § 360-*l*)

75.     TAC re-alleges and incorporates the allegations in the paragraphs above as if fully set forth herein.

76.     Defendant commenced use of its knockoff KAHFUA Marks in commerce long after TAC commenced use of its KAHLUA Marks.

77.     TAC's KAHLUA Marks are distinctive  and have acquired secondary meaning

that is capable of dilution.

78.     Defendant's knockoff KAHFUA Mark and KAHFUA Label are substantially indistinguishable from TAC's KAHLUA Marks.

79.     By using its knockoff KAHFUA Mark and KAHFUA Label in commerce, Defendant has injured and is likely to injure TAC's business reputation, Defendant has blurred and tarnished and is likely to blur and tarnish the distinctive quality of TAC's KAHLUA Marks, and Defendant has lessened the capacity of TAC's famous KAHLUA Marks to exclusively identify and distinguish TAC's goods and is likely to lessen the capacity of TAC's famous KAHLUA Marks to exclusively identify and distinguish TAC's goods, all in violation of N.Y. Gen. Bus. Law § 360-*l*.

80.     Defendant's acts have caused TAC to lose control over the reputation and goodwill associated with its KAHLUA Marks.

81.     Defendant's acts irreparably injure TAC's business, reputation, and goodwill. Unless Defendant is enjoined from its wrongful conduct, TAC will continue to suffer irreparable injury and harm for which it has no adequate remedy at law.

## COUNT VI

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

82.     TAC re-alleges and incorporates the allegations in the paragraphs above as if fully set forth herein.

83.     TAC commenced use of its KAHLUA Marks in U.S. commerce long before Defendant's unauthorized use of the confusingly similar and counterfeit KAHFUA Mark and KAHFUA Label.

84.     Defendant is using in U.S. commerce marks substantially identical and

confusingly similar to TAC's KAHLUA Marks in connection with advertising and sale of a knockoff coffee liqueur product.

85.      Defendant has willfully traded on TAC's goodwill in TAC's KAHLUA Marks and the reputation TAC has established in connection with its products, as well as confused consumers as to the origin of Defendant's goods and passed off its products as those of TAC's.

86.      Defendant's infringement is likely to cause confusion, mistake, or deception as to source, origin, affiliation, connection or association of Defendant's goods, constituting trademark infringement and unfair competition under the laws of New York.

87.      TAC has suffered damages and Defendant has obtained profits and/or unjust enrichment as a result of Defendant's infringement of TAC's KAHLUA Marks.

88.      Defendant's acts irreparably injure TAC's business, reputation, and goodwill. Unless Defendant is enjoined from its wrongful conduct, TAC and the public will continue to suffer irreparable injury and harm, for which they have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, TAC prays for the following relief:

a.      That the Court enter judgment against Defendant on all claims for relief alleged herein and find that Defendant has acted willfully in infringing, counterfeiting, and unfairly competing with TAC and TAC's KAHLUA Marks;

b.      That the Court issue a preliminary and permanent injunction against Defendant, its employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, assigns, and all those in active concert or participation with them who receive notice of this Court's order, judgment, or decree:

i.      Prohibiting Defendant and all those in active concert or participation with Defendant from using "KAHFUA," whether alone or in combination with any other word(s), term(s), designation(s), mark(s), or design(s), or any mark that is likely to cause confusion with TAC or TAC's KAHLUA Marks, or that is likely to dilute TAC's KAHLUA Marks, or that unfairly competes with TAC, including but not limited to the mark, label, and product depicted in Paragraph 12 of this Complaint;

ii.      Prohibiting Defendant and all those in active concert or participation with Defendant from advertising, promoting, distributing, or selling any goods or services bearing "KAHFUA," whether alone or in combination with any other word(s), term(s), designation(s), mark(s), or design(s), or any mark that is likely to cause confusion with TAC or TAC's KAHLUA Marks, or that is likely to dilute TAC's KAHLUA Marks, or that unfairly competes with TAC, including but not limited to the mark, label, and product depicted in Paragraph 12 of this Complaint;

iii.      Prohibiting Defendant and all those in active concert or participation with Defendant from registering, applying to register, or using any trademark, service mark, domain name, trade name, or other source identifier or designation of origin consisting of or incorporating the counterfeit KAHFUA Mark or KAHFUA Label, or any other matter that infringes or is likely to cause confusion

with TAC, or that is likely to dilute TAC's KAHLUA Marks, or that unfairly competes with TAC, including but not limited to the mark, label, and product depicted in Paragraph 12 of this Complaint;

iv. Requiring Defendant to immediately deliver up for destruction all literature, signs, billboards, labels, prints, packages, products, wrappers, containers, advertising materials, stationery, and other items in their possession, custody or control that use the KAHFUA Mark or KAHFUA Label or other confusingly similar marks pursuant to 15 U.S.C. § 1118;

v. Requiring Defendant to immediately recall all literature, signs, billboards, labels, prints, packages, products, wrappers, containers, advertising materials, stationery, and other items in their possession, custody or control that use the KAHFUA Mark or KAHFUA Label or other confusingly similar marks;

vi. Requiring Defendant to surrender to the Alcohol and Tobacco Tax and Trade Bureau its COLA for KAHFUA (TTB 15037001000041);

vii. Requiring Defendant to file with the Court and serve on TAC within thirty (30) days after entry of an injunction, a report in writing under oath setting forth in detail the manner in which Defendant has complied with the Court's injunction.

c. That the Court find that this is an "exceptional case" under 15 U.S.C. § 1117 and

grant monetary relief to TAC in the form of:

      i.      Statutory damages in the amount of Two Million Dollars ($2,000,000) per counterfeit mark, per type of goods Defendant advertised or sold, pursuant to 15 U.S.C. § 1117(c);

      ii.      An accounting of all profits derived by Defendant from the acts complained of herein under 15 U.S.C. § 1117 and any other applicable statute or common law;

      iii.      TAC's damages allowable under 15 U.S.C. §§ 1117 and any other applicable statute or common law;

      iv.      Treble damages and an enhanced award of Defendant's profits under 15 U.S.C. §§ 1117 and any other applicable statute or common law;

      v.      Punitive or exemplary damages as permitted under New York law;

      vi.      TAC's costs and attorneys' fees under 15 U.S.C. § 1117, the law of New York, and this Court's inherent power; and

      vii.      Pre-judgment and post-judgment interest on the foregoing sums.

d.      That the Court award TAC such further relief as it may deem just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), TAC demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

Dated: June 3, 2015                    By: /s/Monica S. Asher
                                           Monica S. Asher
                                           MCDERMOTT WILL & EMERY LLP
                                           340 Madison Avenue
                                           New York, NY 10173
                                           Telephone:  (212) 547-5706
                                           Facsimile:   (212) 547-5444
                                           Email:  masher@mwe.com

                                           Robert W. Zelnick (to file for admission
                                           *pro hac vice*)
                                           Mary D. Hallerman (to file for admission
                                           *pro hac vice*)
                                           MCDERMOTT WILL & EMERY LLP
                                           500 North Capitol Street, N.W.
                                           Washington, D.C.  20001-1531
                                           Telephone:   (202) 756 8000
                                           Facsimile:   (202) 756 8087
                                           Email:  rzelnick@mwe.com,
                                           mhallerman@mwe.com

                                           *Attorneys for Plaintiff*
                                           *The Absolut Company Aktiebolag*